Meir Rubinov, NY Bar # 6077887
*Admitted Pro Hac Vice*
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| RUBEN FLORES,<br><br>                    Plaintiff,<br><br>vs.<br><br>ASSUREHIRE, INC.,<br><br>                    Defendant. | Case No.: 2:25-cv-01621-WLH-SK<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: June 6, 2025<br>Hearing Time: 1:30 p.m.<br>Courtroom: 9B<br><br>Complaint filed: February 26, 2025<br>Trial Date: Not set |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

## Cases

*Adan v. Insight Investigation, Inc.*, No. 16cv2807-GPC(WVG), 2018 U.S. Dist.
   LEXIS 8365, *22-*23 (S.D. Cal. Jan. 18, 2018) ...................................................23

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).....29

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). ........................................9

*Doe v. Sterling Infosystems, Inc.*, No. CV15-04770-RGK (AJWx), 2015 WL
   13917196 (C.D. Cal. Dec. 21, 2015), ...............................................................25

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ......................................................8

*Gorman v. Wolposs & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); ..........9

*Graham v. Sunnova Energy Int'l, Inc.*, No. 1:22-cv-0622 JLT BAM, 2024 U.S. Dist.
   LEXIS 34415 (E.D. Cal. Feb. 28, 2024)..............................................................19

*Guimond*, 45 F.3d at 1332-33; and *Drew v. Equifax*, 690 F.3d 1100, 1109 (9th Cir.
   2012)......................................................................................................................17

*Hartwig v. Byrider Fin., LLC*, No. 23-cv-8-wmc, 2025 U.S. Dist. LEXIS 15991
   (W.D. Wis. Jan. 28, 2025) .................................................................................22

*Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336
   (E.D.V.A. 2016)....................................................................................................11

*Henderson v. Experian Info. Sols., Inc.*, No. 2:24-cv-10686-MCS-AJR, 2025 U.S.
   Dist. LEXIS 54292 (C.D. Cal. Mar. 21, 2025) ...................................................14

*Heras v. Nelnet, Inc.*, 2017 U.S. Dist. LEXIS 65211 (C.D. Cal. Apr. 28, 2017) .....10

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) .....................................................................25

*Joseph v. Tenant Tracker, Inc.*, 2023 U.S. Dist. LEXIS 51940, at *21-22 (W.D.
   Wash. Feb. 3, 2023).............................................................................................11

*Koller v. Monsanto Co.*, 2025 U.S. Dist. LEXIS 7334, at *2 (9th Cir. Mar. 27, 2025)
   ................................................................................................................................8

*Kulb v. ChexSystems, Inc.*, 2025 U.S. Dist. LEXIS 67413, at *5 (E.D.P.A. Apr. 8,
   2025)......................................................................................................................10

*Lara v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 118150, *8 (S.D. Cal.
   June 24, 2021) ......................................................................................................18

*Leo v. AppFolio, Inc.*, 2018 U.S. Dist. LEXIS 14931 (W.D. Wash. Jan. 30, 2018).14

*Leslie v. Experian Info. Sols., Inc.*, No. 21-00334 JMS-RT, 2023 U.S. Dist. LEXIS
   136434 (D. Haw. Aug. 4, 2023) .........................................................................17

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009)...18

*Lopez v. Nat'l Credit Reporting, Inc.*, 2013 U.S. Dist. LEXIS 67889 (N.D. Cal.
   May 13, 2013) ......................................................................................................11

*Philpot v. Kos Media LLC*, No. 18-cv-04100-TSH, 2018 U.S. Dist. LEXIS 234047
   (N.D. Cal. Dec. 6, 2018) .....................................................................................15

*Razaghi v. Razaghi Dev. Co., LLC*, 2021 U.S. Dist. LEXIS 188237 (D. Nev. Sep.
30, 2021) ................................................................................................... 29

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009) ............. 16

*Rodriguez v. Equifax Info. Servs., LLC*, 2023 U.S. Dist. LEXIS 44891, at *4 n.4
(S.D. Cal. Mar. 15, 2023) ......................................................................... 15

*Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at *21 (C.D. Cal.
May 8, 2017) ............................................................................................ 10

*Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 148 (4th Cir. 2008).
...................................................................................................................... 9

*Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 794, 756 (9th Cir. 2018). .................... 9

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635
(2016) ...................................................................................................... 22

*Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 4344746, at *3 (E.D. Cal.
Aug. 28, 2014) ......................................................................................... 19

*Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095 (N.D.
Cal. 2016) ................................................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ................... 9

*Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889
(11th Cir. 2015) ....................................................................................... 19

*Troy v. Equifax Info. Servs., LLC*, 2021 U.S. Dist. LEXIS 140996 (D. Ariz. July 28,
2021) ....................................................................................................... 10

*United States v. Lopez*, 998 F.3d 431, 441 (9th Cir. 2021) ...................................... 26

*White v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 113042, *8 (C.D. Cal.
May 16, 2024) ......................................................................................... 26

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015) ............................ 25

**Statutes**

§ 1681k(a)(2) ........................................................................................................... 20

§1681e(b) ............................................................................................................... 10

15 U.S.C § 1681k(a)(1) & (2) ................................................................................. 21

15 U.S.C. §§1681n(a), ............................................................................................ 18

15 U.S.C. §1681k ................................................................................................... 20

Cal. Civ. Code § 1785.14 ....................................................................................... 26

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 8

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................5

II.  STATEMENT OF FACTS ...................................................................6

III. LEGAL STANDARDS ......................................................................8

IV.  ARGUMENT ...............................................................................9

A.   The Complaint Plausibly Alleges that Defendant Reported Inaccurate Information ........................................................................9

1.   The AssureHire report was patently inaccurate. ..................................9

2.   The AssureHire report was materially misleading. ...............................10

3.   A boilerplate disclaimer does not magically cure an inaccuracy and insulate Defendant from §1681e(b) liability. ...................................10

B.   Plaintiff is Not Required to Anticipate and Plead Around Defendant's Affirmative Defense that it Maintained Reasonable Procedures ........................13

C.   The Complaint Plausibly Alleges That Plaintiff was Damaged ...................16

D.   The Complaint Adequately Alleges that AssureHire Acted Willfully ............18

E.   Plaintiff's §1681k(a) Claim Is Well-Pled And Should Be Sustained ............20

1.   Plaintiff alleges that he did not receive a §1681k(a)(1) notice ..............21

2.   Plaintiff has standing to assert his § 1681k claim ..........................22

3.   AssureHire does not maintain strict procedures to ensure consumer reports are complete and up-to-date ................................................23

F.   Plaintiff's State-Law Claims Are Well-Pled ..................................26

G.   If Needed, Plaintiff Requests Leave to File an Amended Complaint ............26

H.   Judicial Notice As To Defendant's Deficient § 1681k(a)(1) Notice as a Matter of Law ...............................................................28

V.   CONCLUSION ...............................................................29

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

Plaintiff Ruben Flores ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant AssureHire, Inc.'s ("AssureHire" or "Defendant") motion to dismiss.[1]

## I.    PRELIMINARY STATEMENT

This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). Defendant, a regulated consumer reporting agency ("CRA"), sold an employment screening report to Plaintiff's prospective employer, Patriot Environmental Services ("Patriot"), containing a misdemeanor DUI conviction that did not belong to Plaintiff. Rather, it belonged to a different individual with a similar name (the "non-consumer"). Unsurprisingly, upon reviewing the report, Patriot rescinded its pending job offer to Plaintiff.

The inaccurate reporting damaged Plaintiff financially and wreaked havoc on his personal life. His family and fiancé believed that he had relapsed into alcoholism, and those relationships ruptured. His engagement was soon called off; his family unsympathetic. He remained unemployed for 81 days.

This should not have happened. As a regulated CRA, AssureHire was required to maintain reasonable procedures to ensure the "maximum possible accuracy" of

---

[1] As used herein, the terms "Complaint," "¶__" and "¶¶__" refer to the complaint filed in this action on February 26, 2025, ECF No. 1. "Mem." refers to AssureHire's Memorandum of Points and Authorities in support of its Rule 12(b)(6) motion, ECF No. 15-1. "Miller Dec." refers to the Declaration of Alexander R. Miller dated April 14, 2025 with exhibits thereto, ECF No. 15-2. Unless otherwise noted, all emphasis is added and citations are omitted.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

information in Plaintiff's consumer report. At the very least, it should have cross-referenced Plaintiff's personal identifying information with that of the non-consumer.

Based on these allegations, the complaint alleges that AssureHire violated §1681e(b) and its state law analogue by failing to maintain reasonable procedures to properly match criminal records to consumers.  The complaint also alleges that AssureHire violated §1681k by failing to notify him that it reported adverse information on his consumer report.

Defendant now moves to dismiss, arguing that Plaintiff wasn't damaged (he was); that the reporting wasn't inaccurate (it was); that Plaintiff did not plead enough facts to prove willfullness (he did); and that he failed to describe the procedural failures that led to the inaccurate reporting (he didn't have to, but still did). Defendant's motion should be denied.

## II.    STATEMENT OF FACTS

This FCRA claim arises out of an employment screening report sold by Defendant to Patriot in connection with Plaintiff's employment application. Specifically, AssureHire reported that Plaintiff's criminal record included a recent misdemeanor conviction from Madera County for driving under the influence.  ¶48. The report stated that Plaintiff was sentenced to five days' imprisonment, three years of probation, and a substantial monetary penalty. *Id*. But that criminal record did not belong to Plaintiff. ¶49.  Rather, it belonged to a completely different individual with

a similar name.  ¶51.  Unlike the non-consumer, Plaintiff has never been convicted of any DUI.  ¶50.

Plaintiff was initially scheduled to start working for Patriot on December 11, 2024.  ¶42. On December 5, 2024, the report was delivered to Patriot, who reviewed it and notified Plaintiff that the job offer was rescinded. ¶¶46, 61.

On January 26, 2025, Plaintiff submitted a written dispute to AssureHire, explaining that the DUI conviction did not belong to him and demanding that the report be correct.  ¶¶65-70.  On January 28, 2025, AssureHire issued an updated report. ¶¶71-73.  On February 14, 2025, Patriot extended a new job offer to Plaintiff with a "tentative" start date of March 3, 2025. ¶74.

This entire ordeal was financially ruinous and personally devastating to Plaintiff. As a direct result of AssureHire's reporting, Plaintiff remained unemployed for 83 days, from December 11, 2024 until March 3, 2025.  ¶¶42, 75-77.  Moreover, as a recovering alcoholic, the personal stigma of Defendant's reporting had a ripple effect on Plaintiff's personal life.  His fiancé believed that he had relapsed, and their once-budding relationship became permeated with feelings of distrust, betrayal, and outright conflict; the engagement was soon terminated.  ¶78. Plaintiff own family members were frustrated that he could no longer control his purported alcoholism and could not hold back from expressing their disappointment and disgust when Plaintiff had to turn to them for financial assistance. ¶78. The emotional turmoil

Plaintiff endured manifested physically in the form of nausea, loss of appetite, elevated blood pressure, and debilitating depression.  ¶¶11, 80.

This should not have happened.  To the contrary, the complaint alleges that it could have been easily prevented if AssureHire maintained reasonable procedures for matching criminal records to consumers.  As a matter of policy, however, AssureHire will report criminal records based solely on a partial name and date of birth match, without considering any other publicly available information.   For instance, AssureHire does not review the public court records to confirm that the convicted criminal and the consumer are the same person. It does not cross reference the respective address histories of the consumer and the convict.  It matches criminal records without comparing and matching the consumer's drivers' license with official mug shots.  And it does not utilize the consumer's social security number as a screening mechanism to prevent improper matches.  *See* ¶¶6-9, 35-6, 38, 46, 51-56, 64.

## III.   LEGAL STANDARDS

Defendant's motion is assessed using the familiar plausibility standards of a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016). Thus, plaintiff's factual allegations are presumed to be true, and he is entitled to the benefit of every favorable inference that can be drawn from her allegations. *See Koller v. Monsanto Co.*, 2025 U.S. Dist. LEXIS 7334, at *2 (9th Cir. Mar. 27, 2025); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  The question is whether a claim is "***plausible***" and, therefore, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## IV.    ARGUMENT

### A. The Complaint Plausibly Alleges that Defendant Reported Inaccurate Information

A threshold showing that the reporting is "inaccurate" is necessary to succeed on a §1681e(b) claim.  *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 794, 756 (9th Cir. 2018).  In the Ninth Circuit, a report is "incomplete or inaccurate" when it is "patently incorrect" or "when it is misleading in such a way and to such an extent that it can be expected to [have an] adverse effect." *Gorman v. Wolposs & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *accord Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 148 (4th Cir. 2008).  Under either standard, a jury could find that AssureHire's reporting was inaccurate.

#### 1.    *The AssureHire report was patently inaccurate.*

The complaint alleges, and AssureHire readily concedes, that AssureHire sold a consumer report about Plaintiff that included a DUI conviction belonging to a completely different person. *Cf.* Mem. at 7:5-7 ("it turns out that Plaintiff was not the same 'Ruben Flores' listed in the relevant criminal records.").  Because "matching

facially accurate data to the wrong consumer necessarily creates an inaccuracy," the complaint plausibly alleges that AssureHire reported inaccurate information. *Kulb v. ChexSystems, Inc.*, 2025 U.S. Dist. LEXIS 67413, at \*5 (E.D.P.A. Apr. 8, 2025). No more is required at the pleading stage. *See Heras v. Nelnet, Inc.*, 2017 U.S. Dist. LEXIS 65211 (C.D. Cal. Apr. 28, 2017); *Troy v. Equifax Info. Servs., LLC*, 2021 U.S. Dist. LEXIS 140996 (D. Ariz. July 28, 2021) ("a plaintiff need only allege that her credit report contained an inaccuracy to make her *prima facie* case - and survive a motion to dismiss - under §1681e(b)").

### 2.    *The AssureHire report was materially misleading.*

Even if the criminal record information was facially accurate, the AssureHire report was misleading because it failed to disclose that the criminal record belonged to a different consumer. As alleged, virtually every person that encountered the report was misled into believing that Plaintiff has a recent DUI conviction. Patriot rescinded his job offer. His fiancé left him. His family shamed him. These well-pled, strong reactions to the report create an inference that the report was materially misleading to a reasonable consumer. *See Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at \*21 (C.D. Cal. May 8, 2017); *Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at \*21 (C.D. Cal. May 8, 2017).

### 3.    *A boilerplate disclaimer does not magically cure an inaccuracy and insulate Defendant from §1681e(b) liability.*

Defendant concedes that the DUI conviction belongs to a different person. *Cf.*

Mem. at 7:5-7.  It nevertheless argues that the report itself effectively conveyed that criminal records might not belong to the subject of the report (*i.e.*, Plaintiff) for three reasons: (i) the report included a disclaimer stating that the information may be inaccurately associated with the subject of the report; (ii) the criminal record search was adjudicated "consider"; and (iii) the report indicates that the record was confirmed by "NAME/DOB."  *Cf.* Mem. at 1,13.  Defendant is wrong.

First, courts have overwhelming rejected the argument that a boilerplate disclaimer insulates a CRA from §1681e(b) liability. *See, e.g.*, *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336 (E.D.V.A. 2016) (defendant could not avoid liability by pointing to disclaimer or other contractual delegation of responsibility). *Joseph v. Tenant Tracker, Inc.*, 2023 U.S. Dist. LEXIS 51940, at *21-22 (W.D. Wash. Feb. 3, 2023) (collecting cases).[2]

In *Lopez v. Nat'l Credit Reporting, Inc.*, 2013 U.S. Dist. LEXIS 67889 (N.D. Cal. May 13, 2013), for example, a consumer was denied housing after defendant sold a tenant screening report containing an eviction record that belonged to a

---

[2] *Cf. Smith v. Lexisnexis Screening Sols. Inc.*, 138 F. Supp. 3d 872, 898 (E.D. Mich. 2015) ("Defendant has provided no legal authority suggesting that a CRA can disclaim liability for errors on a report"), *aff'd in relevant part, rev'd in part on other grounds*, 837 F.3d 604 (6th Cir. 2016); *Cortez v. Trans Union*, L.L.C., 617 F.3d 688, 708 (3d Cir. 2010) (expressing doubt that disclaimer in subscriber agreement could alter coverage under FCRA); *Ramirez v. Trans Union, L.L.C.*, 2017 WL 1133611, at *4 (N.D. Cal. Mar. 27, 2017) (rejecting argument that CRA's disclaimer absolved it of liability), *aff'd on other grounds*, 951 F.3d 1008 (9th Cir.), *rev'd in part on other grounds*, ___ U.S. ___, 141 S. Ct. 2190, (2021); *Philpot v. Microbilt Corp.*, 2018 WL 834619, at *6 (W.D. Ky. Feb. 12, 2018) (denying summary judgment on question of accuracy even though report included disclaimer); *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1349 (N.D. Ga. 2015) (disclaimer that did not relieve CRA of liability).

different consumer. *Id.* at *8. The consumer filed suit under §1681e(b). A disclaimer on the report clearly warned that "there is no guarantee that the name(s) listed below are the same individual(s) that are applying for housing." *Id.* at *8. The defendant moved to dismiss, arguing that "plaintiff cannot demonstrate an inaccurate in her credit report because it accurately reports the existence of court records, with no representation that those court filings belong to plaintiff." *Id.* The court rejected that argument and denied the motion.

Second, by indicating that the DUI was "Confirmed by NAME/DOB," the report conveyed that the DUI did, in fact belong to Plaintiff. On a motion to dismiss, AssureHire is not entitled to the dubious yet favorable inference that end users would interpret that notation as a warning that the DUI actually belonged to a different person.

Finally, Defendant's emphasis on the scoring associated with the Madera County Criminal Seach (that stated "consider") is a red herring. *Cf.* Mem at 10, 13. As explained in a 2019 NCLC Report, many CRAs offer automated decisioning or adjudication products that score applicants and provide a recommendation about whether or not to accept them. In the employment context, questions arose as to whether an auto-adjudication to reject an applicant client qualified as an adverse action that necessitates prior written notice to the consumer. To avoid these issues, the industry has shifted away from recommending outright rejections or failures. Eligibility issues are now flagged using more neutral terms (such as "consider"). The

outcome, however, is the same. The candidate is rejected. *See* NCLC Report, *Broken Records Redux* at 13-15 (2019) *available at* https://www.nclc.org/wp-content/uploads/2022/09/report-broken-records-redux.pdf.    Thus, the report was inaccurate, despite AssureHire's use of the term "consider" on the report.

### B. Plaintiff is Not Required to Anticipate and Plead Around Defendant's Affirmative Defense that it Maintained Reasonable Procedures

Throughout its brief, AssureHire argues that the §1681e(b) claim must be dismissed because the complaint fails to allege that the inaccuracy was caused by AssureHire's failure to follow reasonable procedures.  *Cf.* Mem. at 14-15. AssureHire is wrong, both the facts and the law.

The complaint describes with precision how the inaccuracy was caused by AssureHire's failure to maintain reasonable for matching criminal records to consumers.  Indeed, it alleges that AssureHire will report criminal records based solely on a partial name and date of birth match, without considering any other publicly available information.  For instance, AssureHire does not review the public court records to confirm that the convicted criminal and the consumer are the same person. *Cf.* Mem. at 9.  It does not cross reference the respective address histories of

the consumer and the convict.[3]  It matches criminal records without comparing and matching the consumer's drivers' license with official mug shots.  And it does not utilize the consumer's social security number as a screening mechanism to prevent improper matches.  *See* ¶¶6-9, 35-6, 38, 46, 51-56, 64.  "While these allegations may not include the level of detail [AssureHire] desires, they are sufficient to state a plausible claim under 15 U.S.C. § 1681e(b) . . . [AssureHire] can seek further detail on Plaintiff's theory of the claim in discovery." *Henderson v. Experian Info. Sols., Inc.*, 2025 U.S. Dist. LEXIS 54292 (C.D. Cal. Mar. 21, 2025).

Regardless, Plaintiff is not required to anticipate and negate AssureHire's "reasonable procedures" affirmative defense at the pleading stage.  *See generally Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016); *Leo v. AppFolio, Inc.*, 2018 U.S. Dist. LEXIS 14931 (W.D. Wash. Jan. 30, 2018) (explaining that "reasonable procedures" is an affirmative defense because it allows a CRA to escape §1681e(b) liability if it establishes that an inaccurate report was generated despite the fact that it followed unreasonable procedures); *accord*

---

[3] AssureHire contends that it did was not provided with Plaintiff's address so it cannot be faulted for failing to cross referencing the address. This argument is disingenuous. he consumer report attached to AssureHire's motion confirm that AssureHire did have Plaintiff's social security number, address, date of birth, email and cell phone number.  In addition, it confirms that AssureHire conducted a "SSN Address Trace" on December 2, 2024, which presumably would have shown that Plaintiff was never associated with the address belonging to the non-consumer.  Moreover, this concession establishes willfulness and establishes that, as a matter of policy, AssureHire will run searches that are all but guaranteed to yield expansive and mismatched results.

*Philpot v. Kos Media LLC*, 2018 U.S. Dist. LEXIS 234047 (N.D. Cal. Dec. 6, 2018) ("a plaintiff is not obligated to plead the absence of affirmative defenses.").

In other words, the reasonableness of procedures is simply not relevant to a Rule 12(b)(6) motion. *See Rodriguez v. Equifax Info. Servs., LLC*, 2023 U.S. Dist. LEXIS 44891, at *4 n.4 (S.D. Cal. Mar. 15, 2023). Rather, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.* (citing *Guimmond*, 45 F.3d at 1333).

This rule makes sense. Ordinary consumers do not have access to the internal operating procedures of CRAs. Even in litigation, those procedures and policies are zealously guarded, withheld in discovery, and designated as confidential once produced. If consumers were expected to plead the details of a CRA's internal procedures before discovery, every §1681e(b) claim would be dismissed at the pleading stage, and the FCRA would be effectively neutered. AssureHire's attempt to hold Plaintiff to a heightened pleading standard should be rejected.[4]

---

[4] Incidentally, AssureHire admits that it runs searches and compiles consumer reports based solely on the information provided by employer, whom it faults for providing limited information. *Cf.* Mem. at 7-8. Discovery is needed to determine whether this procedure is reasonable, and whether other safeguards have been implemented to prevent improper matches for common names, such as "Flores." *See* NCLC Report, Digital Denials: How Abuse, Bias, and Lack of Transparency in Tenant Screening Harm Renters at 36-37 (explaining that the prevalence of reports containing mismatched criminal records is "disproportionately high in Latino, Asian and Black populations . . . because these communities tend to have fewer unique surnames") (2023), *available at* https://www.nclc.org/wp-content/uploads/2023/09/202309_Report_Digital-Denials.pdf.

## C. The Complaint Plausibly Alleges That Plaintiff was Damaged

The complaint alleged that as a direct result of AssureHire's reporting, Patriot rescinded the job offer and Plaintiff remained unemployed for 83 days, from December 11, 2024 until March 3, 2025.   ¶¶42, 75-77.   Taken as true, these allegations establish that Plaintiff suffered economic damages as a result of the inaccurate report. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009).

But the complaint goes further than that, and explains with specificity that as a recovering alcoholic, the personal stigma of Defendant's reporting had a ripple effect on Plaintiff's personal life.  His fiancé believed that he had relapsed, and their once-budding relationship became permeated with feelings of distrust, betrayal, and outright conflict; the engagement was soon terminated.  ¶78. Plaintiff own family members were frustrated that he could not longer control his purported alcoholism and could not hold back from expressing their disappointment and disgust when Plaintiff had to turn to them for financial assistance. ¶78. The emotional turmoil Plaintiff endured manifested physically in the form of nausea, loss of appetite, elevated blood pressure, and debilitating depression.  ¶¶11, 80.

Defendant nevertheless argues that Plaintiff was not damaged because the report was *eventually* fixed and his job offer was *eventually* reinstated. Defendant is wrong. The reinstatement of Plaintiff's job offer may have capped off damages, it did not magically undo the damage that was done. Plaintiff still experienced a period of

economic and noneconomic turmoil when his job offer was rescinded. In other words, Defendant cannot credibly argue that no harm has ever taken place. *See Leslie v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 136434 (D. Haw. Aug. 4, 2023) (citing *Guimond*, 45 F.3d at 1332-33; *Drew v. Equifax*, 690 F.3d 1100, 1109 (9th Cir. 2012)).

Moreover, AssureHire insists that Plaintiff "could have cleared up the discrepancy very quickly and avoided all of the problems" caused by the inaccurate consumer report. To prove this point, AssureHire points to the fact that Plaintiff disputed the inaccurate reporting on January 26, 2025, and received a new job offer on February 14, 2025, with a proposed start date of March 3, 2025. *Cf.* Mem. at 9:12-21. In other words, AssureHire is apparently arguing a diligent dispute would have caused a delay of no more than 36 days.[5] This argument is bizarre and lacks merit because Plaintiff would have lost time from work and wages due to the initial misreporting regardless. What's more, there is absolutely no requirement to dispute under §1681e(b). Thus, whether or not Plaintiff disputed is immaterial to §1681e(b) liability.

---

[5] Plaintiff was originally scheduled to start working on December 11, 2024. Patriot rescinded the offer on December 5, 2024, the same day AssureHire published the inaccurate consumer report. If Plaintiff had submitted a dispute the next day, he would be able to start working 36 days later on January 11, 2025, a mere 31 day delay.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

**D. The Complaint Adequately Alleges that AssureHire Acted Willfully**

The FCRA does not make CRAs strictly liable for all inaccuracies, but instead creates a private right of action for negligent or willful violations of the FCRA. *See* 15 U.S.C. §§1681n(a), 1681o(a).  To plead a willful violation under the FCRA, a complaint must allege that the defendant knowingly or recklessly violated the law. Recklessness means that the CRA "ran a risk of violating the law substantially greater than the risk associated with a reading [of the FCRA] that was merely careless." *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

Critically, courts in this District have concluded that "general allegations are sufficient to maintain a claim for willful violations of the FCRA." *Ben-Avi v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 145809 (S.D. Cal. Aug. 18, 2023) (citing *Barrios v. Equifax Info. Services, LLC*, 2019 U.S. Dist. LEXIS 227242, at *5-6 (C.D. Cal. Oct. 28, 2019)).  This principle is a corollary of Fed. R. Civ. P. 8, and the general rules that allegations pertaining to state of mind need not be pled with specificity. *Cf.* Fed. R. Civ. P. 9 (no duty to plead scienter with particularity).

Moreover, willfulness can be inferred where a CRA was on notice of the potential inaccuracy. *See Lara v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 118150, *8 (S.D. Cal. June 24, 2021). Accordingly, allegations that a defendant had knowledge of the FCRA's requirements prior to any violation "can be read to allege willfulness in terms of either knowledge or recklessness." *Graham v. Sunnova Energy Int'l, Inc.*, No. 1:22-cv-0622 JLT BAM, 2024 U.S. Dist. LEXIS 34415 (E.D. Cal.

Feb. 28, 2024) (citing *Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889 (11th Cir. 2015)). Additionally, plaintiff's allegations that defendant's conduct was objectively unreasonable suffice to properly allege a willful and reckless FCRA violation. *See Syed v. M-I LLC*, 2014 WL 4344746, at *3 (E.D. Cal. Aug. 28, 2014).

As applied here, the complaint alleges that Defendant compiled a consumer report using nothing more than the consumer's name and date of birth. Defendant, a sophisticated background check company in the business of disseminating public record information, willfully favored automation and cost-efficiency over reasonable quality control procedures to ensure accuracy and compliance. By opting for a system that forgoes individualized review and quality control and favoring automation, Defendant adopted a business model practically designed to ignore known risks of harm—conduct squarely within the ambit of recklessness. That choice is not neutral—it is a business model built around risk evasion, not risk mitigation. Tellingly, the very disclaimer Defendant inserts at the top of its report—stating that information may be "inaccurately associated" with the subject—condemns it by revealing its awareness that such errors are not only foreseeable, but likely, as Plaintiff alleges. Rather than implement safeguards to prevent these foreseeable harms (like the ones Plaintiff delineated ¶¶ 51-53), Defendant opted for a- boilerplate disclaimer that attempts to shift the burden of due diligence to the employer and the consumer. That practice is emblematic of reckless disregard of its statutory duties.

This disclaimer was put in by Defendant clearly because it was aware of the attendant risks of harm from their credit reporting, exactly as Plaintiff alleged. However, despite ensuring quality control of the contents it reports, it simply slaps a disclaimer unto its report warning of inaccuracy, and essentially conveying to the users that they need to be on notice of these potential inaccuracies that can result from their reporting, instead of actually instituting reasonable procedures to ensure accuracy as Defendant is required.

To press this point further, Plaintiff alleged that Defendant is a member of the Professional Background Screening Association (PBSA), an industry group that conducts frequent trainings and conferences on FCRA compliance. ¶39. It is reasonable to infer that Defendant was or should have been aware of its legal duties and the serious consequences of noncompliance. And yet, Defendant didn't bother to implement any policies or procedures to filter out criminal records that did not belong to the target of the report. At the pleading stage, these allegations plausibly establish that Defendant acted willfully under both §1681e(b) and § 1681k(a)(2).

**E. Plaintiff's §1681k(a) Claim Is Well-Pled And Should Be Sustained**

15 U.S.C. §1681k requires CRAs to comply with certain procedures when furnishing "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." CRAs must "notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the

name and address of the person to whom such information is being reported;" or to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C § 1681k(a)(1) & (2).

### 1. *Plaintiff alleges that he did not receive a §1681k(a)(1) notice*

In his complaint, Plaintiff truthfully alleged—based on the knowledge available to him at the time—that he did not receive notice that Defendant had furnished a consumer report to his prospective employer, which included a grossly stigmatizing and inaccurate misdemeanor DUI conviction. During the parties' meet and confer, Defendant's counsel represented that the same report was emailed to Plaintiff on the date it was sent to the employer. Plaintiff does not recall receiving that email on December 5, 2024, nor reviewing it thereafter. To that extent, Plaintiff acknowledges that the allegation that he never received the report was inaccurate. However, this does not resolve Defendant's noncompliance with § 1681k(a)(1), which requires not only that notice be given, but that it include both the name ***and address*** of the employer receiving the report. Defendant failed to provide the employer's address.

While this omission may appear minor, the statute is explicit—leaving no ambiguity and no room for deviation. Section 1681k(a)(1) is written in clear, mandatory terms—it requires the CRA to provide not just notice, but the *name and address* of the employer receiving the report. Where the statute is this unambiguous

and the obligation this rudimentary, failure to comply should not inure to Defendant's benefit. It should inure to the benefit of the consumer the statute was enacted to protect. Defendant's failure to meet even this most basic requirement therefore necessarily triggers the statutory alternative: a mandatory obligation to maintain—and ultimately prove—strict procedures to ensure the accuracy of the information it reported under § 1681k(a)(2).[6]

### 2. *Plaintiff has standing to assert his § 1681k claim.*

Finally, Defendant's standing argument under § 1681k is legally misguided. To establish standing, a plaintiff must show: (1) an injury in fact; (2) traceability to the defendant's conduct; and (3) redressability. *Hartwig v. Byrider Fin., LLC*, No. 23-cv-8-wmc, 2025 U.S. Dist. LEXIS 15991 (W.D. Wis. Jan. 28, 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). The relevant question is whether the injury must stem from each statutory element or from the violation as a whole. The Supreme Court directly answered this in *TransUnion LLC v. Ramirez*, holding that standing turns on whether a plaintiff suffered concrete harm from the *violation itself*, not from each component of it. 594 U.S. 413, 429 (2021) (emphasis added). The Court reaffirmed that "plaintiffs must demonstrate standing for each claim that they press," not for each discrete statutory

---

[6] Should the Court determine that Plaintiff's §1681k claim is deficient, Plaintiff respectfully requests leave to file an amended complaint to allege Defendant's failure to provide the employer's address remains a violation of § 1681k(a)(1) and triggers the statutory requirement to demonstrate strict procedures under § 1681k(a)(2).

element. *Id.* at 432. Thus, the absence of the employer's address—while one element

of § 1681k(a)(1)—need not independently produce harm if the overall statutory

violation did.

Here, Plaintiff does not seek recompense for Defendant's failure to provide the

required notice under § 1681k(a)(1). Rather, that failure serves as the statutory

trigger—an essential element—imposing on Defendant the obligation under §

1681k(a)(2) to maintain and implement strict procedures to ensure the accuracy and

completeness of the information it reported. *See Adan v. Insight Investigation, Inc.*,

2018 U.S. Dist. LEXIS 8365, *22-*23 (S.D. Cal. Jan. 18, 2018), *see also* 15 U.S.C.

§ 1681k(a)(2). Plaintiff alleges that Defendant failed to maintain even reasonable

procedures under § 1681e(b); it follows necessarily that Defendant could not have

satisfied the heightened standard required by § 1681k(a)(2). Thus, the same injury-

in-fact that supports standing under § 1681e(b) and the CCCRAA—namely, the loss

of employment, collapse of Plaintiff's engagement, and resulting financial,

emotional, and physical harm—necessarily establishes standing for the violation of

§ 1681k(a)(2).

### 3. AssureHire does not maintain strict procedures to ensure consumer reports are complete and up-to-date

Just as Plaintiff more than adequately alleged Defendant's violation of §

1681e(b) by alleging the clear inaccuracy of having a distinctive individual's criminal

record history presented to his prospective employer as his own, it follows that

Plaintiff alleged that Defendant failed to follow strict procedures since this is a more rigorous and heightened standard. *See supra a* § IV(A)(1)-(2).

Additionally, and more concerning is Defendant's construction of § 1681k(a)(2) and Opposing Counsel's representation of Plaintiff's claims relating thereto. Defendant at no point defines the term "complete" to facilitate a productive discourse as such Plaintiff will do so. A record is deemed "complete" if it allows a "user to either link the record to the consumer who was the subject of the search query or exclude that consumer as the source of the record. Conversely, then, any record that does not contain sufficient identifying information to verify the identity of the originating consumer is incomplete." *Adan*, 2018 U.S. Dist. LEXIS 8365 at *23 (citing *Henderson*, 178 F. Supp. at 334 (a seminal case on 1681k(a)(2) jurisprudence)). Here, of course Plaintiff contests the completeness of the criminal record reported. *See* ¶¶35, 36, 60, 100, 105. The reported criminal record lacked key identifiers—such as matching SSN, date of birth, address history, or a mugshot— needed to either confirm Plaintiff as the subject or rule him out. Since the conviction did not belong to Plaintiff, it definitionally could not have verified Plaintiff as the actual subject of the criminal record; yet it also failed to include sufficient information to exclude him. That ambiguity led to adverse action by his prospective employer, proving the record was incomplete. Under § 1681k(a)(2), a record that cannot verify or eliminate the consumer as its subject is, by definition, incomplete— and this one was on all counts.

Amusingly—and quite tellingly—Defendant's argument under § 1681e(b) directly undermines its position under § 1681k(a)(2). Defendant insists it never affirmatively linked the criminal record to Plaintiff, claiming instead that the report merely flagged a potential match for the employer to "consider." But under the well-established definition of completeness, a record is incomplete if it does not allow the user to either link the record to the consumer or exclude them. Defendant cannot simultaneously deny responsibility for making an affirmative association while also claiming the record was "complete"; these positions are mutually exclusive. If the report left the employer in doubt—as Defendant must contend—it failed the completeness requirement by definition.

Defendant's reliance on *Doe v. Sterling Infosystems, Inc.*, No. CV15-04770-RGK (AJWx), 2015 WL 13917196 (C.D. Cal. Dec. 21, 2015), is misplaced. As *Doe* makes clear, § 1681k(a)(2) defines "up-to-date" specifically as reflecting the current public record status of the item reported. See *Doe*, 2015 U.S. Dist. LEXIS 188913, at *13 (citing 15 U.S.C. § 1681k(a)(2)). There is no indication—textual or contextual—that Congress intended "completeness" to mean the same thing. Indeed, collapsing these terms would render "complete" superfluous and contradict the well-settled canon that statutes must be construed to give effect to every word. See *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (courts must avoid interpretations that render statutory terms "inoperative or superfluous"); *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015) (same). The Ninth Circuit echoes this principle, calling the

canon against surplusage a "rule of thumb" for statutory interpretation. *United States v. Lopez*, 998 F.3d 431, 441 (9th Cir. 2021). Defendant's conflation of these distinct statutory terms is not only unsupported by the language of the FCRA, it directly contradicts these interpretive mandates and should therefore be rejected.

**F.  Plaintiff's State-Law Claims Are Well-Pled**

Cal. Civ. Code § 1785.14 requires CRAs to maintain reasonable procedures to ensure they compile and disburse consumer information with maximum accuracy. *White v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 113042, *8 (C.D. Cal. May 16, 2024). "Section 1785.14 is substantially identical to" §1681e(b) of the FCRA." *Id*. (citation omitted).  For the same reasons describe above, Plaintiff's state law claims are well-pled.

**G. If Needed, Plaintiff Requests Leave to File an Amended Complaint**

Although Plaintiff believes that the Complaint's allegations are adequate, if the Court determines that the Complaint is deficient in any way, Plaintiff respectfully seeks to augment his allegations in an amended complaint.  Copies of a Proposed Amended Complaint ("PAC") and a redline comparing the PAC with the operative pleading are attached to the accompanying Rubinov Decl. as Exhibits 1 and 2, respectfully.  The PAC expands on the complaint in the following ways:

  a. Factual Particularization about the Defendant's matching methodology (e.g., reliance on partial name and date of birth), highlights the availability of distinguishing information (e.g., mugshot, address history, and Social

Security number), and clarifies that these data points could have and should have been consulted to prevent the misattribution of the criminal record;

b.  The PAC deepens the articulation of emotional distress by connecting it directly to Plaintiff's history as a recovering alcoholic. It alleges that the false DUI report led Plaintiff's fiancée to suspect a relapse, resulting in the end of their engagement. It also details the stigma felt within Plaintiff's family and the resulting psychological and physical harm, including specific symptoms;

c.  The PAC clarifies the initial factual error by acknowledging that Plaintiff did, in fact, receive the background report on December 5, 2024—although he was unaware of it at the time of filing the original complaint—but makes clear that the notice still violated § 1681k(a)(1) because it failed to include the employer's address, a clear and unambiguous statutory requirement, which in turn triggered Defendant's obligation to have maintained and followed strict procedures under § 1681k(a)(2);

d.  The revised version provides greater specificity and breadth regarding Plaintiff's damages, including concrete economic losses (e.g., being out of work from December 11, 2024 to March 3, 2025), reputational damage, emotional suffering, and physical manifestations of distress; and

e.   It also corrects minor grammatical errors and incorporates refined language and terminology to more precisely and comprehensively describe the nature and impact of the erroneous and stigmatizing dissemination.

The proposed amendments fall squarely within Rule 15's mandate that leave to amend be freely granted "when justice so requires."  This case is still in its infancy and paper discovery has not yet started.  Moreover, Plaintiff did not unduly delay and is seeking leave to amend in response to AssureHire's Rule 12(b)(6) motion to dismiss.  AssureHire will not be prejudiced in any way by the purported amendments as it will have adequate time to defend against these allegations.

## H. Judicial Notice As To Defendant's Deficient § 1681k(a)(1) Notice as a Matter of Law

Plaintiff respectfully requests that the Court, having taken judicial notice of the subject consumer report attached as Exhibit A to Defendant's Request for Judicial Notice, also acknowledge the undisputed and dispositive fact evident on the face of the document: the notice provided to Plaintiff fails to include the employer's address. This omission constitutes a clear violation of 15 U.S.C. § 1681k(a)(1), which unambiguously requires that the CRA notify the consumer "of the fact that public record information is being reported by the consumer reporting agency, together with the **_name and address_** of the person to whom such information is being reported." (emphasis added).

Because there is no factual dispute as to whether this address was included—and the document itself is central to Plaintiff's claims and incorporated by reference (as per the Defendant's own admission at Dkt. No. 15-4, Page 2) —Plaintiff respectfully submits that the Court may, and should, make a summary judgement finding at this stage that the § 1681k(a)(1) notice was deficient as a matter of law. *See Razaghi v. Razaghi Dev. Co., LLC*, 2021 U.S. Dist. LEXIS 188237 (D. Nev. Sep. 30, 2021) *(*citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (permitting a court to convert that portion of a motion to dismiss into a motion for summary judgement)). Accordingly, Defendant was obligated to have maintained and followed "strict procedures" to ensure the completeness and currency of the reported public record information under § 1681k(a)(2)—a duty that Plaintiff plausibly alleges was not met.

## V.    CONCLUSION

For the foregoing reasons, AssureHire's motion should, respectfully, be denied.

Dated: May 16, 2025

By: */s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Admitted Pro Hac Vice*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for AssureHire Inc., certifies that this brief contains 5,598 words, which complies with the word limit of L.R. 11-6.1.

## SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby certify that all other signatories listed, on whose behalf this filing is submitted, concur with the contents of this filing, and have authorized the filing.

**CONSUMER ATTORNEYS, PLLC**

By: */s/ Meir Rubinov*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER ATTORNEYS, PLLC**

By: *<u>/s/ Meir Rubinov</u>*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS