# EXHIBIT 2

Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Admitted Pro Hac Vice*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
25A Crescent Dr. #402
Pleasant Hill, CA 94523
T:(415) 638-9140
E: andrew@ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| RUBEN FLORES,<br><br>                    Plaintiff,<br><br>vs.<br><br>ASSUREHIRE, INC.,<br><br>                    Defendant. | Case No.: 2:25-cv-01621-WLH-SK<br><br>**COMPLAINT AND JURY TRIAL DEMANDED** |

<u>**FIRST AMENDED COMPLAINT**</u>

Ruben Flores ("Plaintiff") by and through his counsel brings the following Complaint against AssureHire, Inc. ("Defendant" or "AssureHire") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and

California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §
1785, *et. seq.*, arising out of an employment background check report that Defendant
published to Plaintiff's potential employer, falsely and/or misleadingly branding
Plaintiff as a convicted misdemeanant with a history of reckless intoxication and
endangering the public through drunk driving. branding Plaintiff as a convicted
misdemeanant with a history of reckless intoxication and endangering the public
through drunk driving.

## **INTRODUCTION**

1.     This is an individual action for damages, costs, and attorney's fees
brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§
1681, *et seq.* ("FCRA") and Cal. Civ. Code § 1785, *et seq.*

2.     Defendant is a consumer reporting agency that compiles and maintains
files on consumers on a nationwide basis. It sells consumer reports generated from
its database and furnishes these consumer reports to employers who use the reports
to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely and/or misleadingly reported to Plaintiff's
prospective employer that Plaintiff had been convicted of a misdemeanor for driving
under the influence (DUI). This patently false and/or misleading representation was
entirely baseless, defamatory, and made with reckless disregard for the truth. reported
to Plaintiff's prospective employer that Plaintiff had been convicted of a
misdemeanor for driving under the influence (DUI). This egregiously false and

2
FIRST AMENDED COMPLAINT

reckless misrepresentation is entirely baseless and defamatory.

4.   Plaintiff has never, at any point in his life, been charged with a misdemeanor for driving under the influence (DUI) or any offense related to intoxicated driving.

5.   Plaintiff's prospective employer—misled and misguided by Defendant's reporting—rejected his job application after receiving a background check from Defendant that falsely and/or misleadingly attributed a misdemeanor conviction to Plaintiff. This stigmatizing and defamatory misrepresentation—wholly unrelated to Plaintiff—directly deprived him of the employment opportunity. Plaintiff's prospective employer rejected his job application after receiving an employment background check report from Defendant, which falsely attributed a misdemeanor conviction to Plaintiff. This stigmatizing and defamatory misrepresentation entirely unconnected to Plaintiff directly cost him the employment opportunity.

6.5.   Defendant's reckless misreporting could have been easily prevented had it exercised even minimal due diligence by reviewing the readily available public court records from Madera County, California. A simple review would have confirmed that the misdemeanor DUI conviction did not belong to Plaintiff, yet Defendant failed to take this basic step before disseminating the false and damaging report to Plaintiff's prospective employer.

7.6.   Had Defendant conducted even a cursory review of the public court

3

records, it would have immediately discovered that the criminal record belonged to

an entirely different individual—one who is clearly and unmistakably distinguishable

from Plaintiff by mug shot, address history, and Social Security number.

8.7.   Defendant does not employ reasonable procedures to assure the

maximum possible accuracy of the information it reports regarding consumers.

Defendant's failure to employ reasonable procedures resulted in Plaintiff's report

being grossly inaccurate.

9.8.   Defendant committed these violations pursuant to its standard policies

and practices, which harm innocent consumers seeking employment by prejudicing

their prospective employers with inaccurate criminal record information.

10.9.   Defendant's inaccurate report cost Plaintiff a good paying job and job

security.

11.10. As a result of Defendant's violations of the FCRA and CCRAA,

Plaintiff has suffered a range of actual damages including, without limitation, loss of

employment opportunities, wages, and benefits; loss of economic opportunities and

positions and advancements in the future; loss of time and money trying to correct

his background check report; the expenditure of labor and effort disputing and trying

to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting

psychological damage; permanent family upheaval; loss of capacity for enjoyment

of life; and severe emotional distress, including mental anguish, anxiety, fear,

frustration, humiliation, and deep embarrassment because of stigma from his family

and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

~~12.~~11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and Cal. Civ. Code § 1785.14. Plaintiff further brings this action against Defendant for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

## **PARTIES**

~~13.~~12. Ruben Flores ("Plaintiff") is a natural person residing in Norwalk, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal Civ. Code § 1785.3(b).

~~14.~~13. Defendant AssureHire, Inc. ("Defendant" or "AssureHire") is a corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 2206 Plaza Dr. Ste. 100, Rocklin, CA 95765. Defendant can be served through its registered agent, C T Corporation System, at 330 N. Brand Blvd. Glendale, CA 91203.

~~15.~~14. Among other things, Defendant sells background checks to employers

for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) and Cal Civ. Code § 1785.3(d) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied

for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.19.While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.20.Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.21.Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## **THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

23.22.Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.23.The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.24.In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer

7

reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.29. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

FIRST AMENDED COMPLAINT

31.30. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32.31. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33.32. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.33. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.34. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.35. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the

costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

~~37.~~36. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37.    Defendant was, and remains, on actual and/or constructive notice that relying on limited identifiers—such as first and last name and date of birth—poses a heightened risk of false positives, particularly for individuals with common names like Plaintiff, who may easily share those identifiers with unrelated third parties.[2] Despite this known risk, Defendant continues to employ such deficient matching procedures, resulting in the dissemination of inaccurate and misleading consumer information, as occurred in Plaintiff's case.

38.    A proper quality control review of Plaintiff's report would have unmistakably revealed that Defendant was falsely attributing a misdemeanor DUI conviction to Plaintiff, when in fact, it belonged to an entirely unrelated individual. This glaring error would have been immediately apparent through a simple comparison of the mug shot in the public record, as well as clear discrepancies in address history and Social Security number.

39.    As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background

---

[2] Fair Credit Reporting; Name-Only Matching Procedures, Page 8.

Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Patriot Environmental Services

40.    In or around November 2024, Plaintiff applied for full-time employment as a Field Technician with Patriot Environmental Services.

41.    Upon information and belief, Plaintiff successfully overcame all requisite hurdles to securing the applied-for position, except one: the passing of a background check report.

42.    On or about November 25, 2024, Plaintiff received a job offer from Patriot Environmental Services indicating that the start date will be on December 11, 2024.

43.    However, the offer of employment extended to Plaintiff was contingent upon Plaintiff's passing of a background check ("consumer report").

43.44. Plaintiff was genuinely eager to begin his role with Patriot Environmental Services, relieved and optimistic that after a prolonged period of unemployment, he would once again be able to provide for his family. Confident in the outcome of the required background check—given his lack of any criminal history—Plaintiff fully intended to commence work on the designated start date without hesitation or concern.

**Defendant Published an Inaccurate Background Check Report to Patriot Environmental Services**

44.45. Patriot Environmental Services contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

45.46. On or about December 2, 2024, Patriot Environmental Services ordered a criminal background check on Plaintiff from Defendant.

46.47. On or about December 5, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Patriot Environmental Services. On or about December 5, 2024, pursuant to its standard procedures—which, upon information and belief, rely primarily on matching first and last name and date of birth—Defendant generated a consumer report concerning Plaintiff and furnished it to Patriot Environmental Services.

48.     Within that consumer report, Defendant published inaccurate false and/or misleading information about Plaintiff.

49.     The fact of the matter that Defendant reported and associated this information to Plaintiff is readily evident even from its disclaimer which stated:

"This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report."

50.     This disclaimer expressly acknowledges that the information contained

in the report is being presented about "the subject of the investigation"—which, in this context, is Plaintiff—and that the reported public records, including criminal activity, are associated with him. The phrase "may be inaccurately associated with the consumer who is the subject of the report" concedes that Defendant is affirmatively linking the information to Plaintiff, while simultaneously attempting to disclaim responsibility for the accuracy of that association.

47.51.Specifically, Defendant's consumer report on Plaintiff brazenly and recklessly smeared his record with a misdemeanor DUI conviction from Madera County, California—an utterly false and baseless conviction that had no connection to him, which appeared in the consumer report as follows:

**County Criminal**
**Madera, CA - FLORES, RUBEN**                                          consider

| | |
|---|---|
| Case Number | CCR076735 |
| Court | Superior |
| Filed Date | 01/22/2024 |
| Offense Date | 12/16/2023 |
| Name | FLORES, RUBEN |
| DOB | 01/08/XXXX |
| Comments | Confirmed By: NAME/DOB |
| | |
| Charge | **DRIVING UNDER THE INFLUENCE (0.08 % OR MORE)** |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 09/18/2024 |
| Sentence | PROBATION: 3 YEARS |
| | JAIL: 5 DAYS |
| | FINE: 1869 |

48.52.The criminal conviction reported by Defendant about Plaintiff to Patriot Environmental Services ***does not*** belong to Plaintiff.

49.53.Plaintiff has never, at any point in his life, been charged with or convicted of a misdemeanor for driving under the influence (DUI).

13

50.54. A cursory review of the widely available public court records confirms that the criminal record belongs to a distinct and unrelated male, Ruben Flores ("Convicted Misdemeanant Flores").

51.55. Had Defendant actually consulted or obtained the widely available public court records regarding the conviction, it would have seen obvious discrepancies between Convicted Misdemeanant Flores and Plaintiff.

52.56. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Misdemeanant Flores include the following:

> (a)    A mug shot relating to the misdemeanor DUI conviction readily demonstrates that Plaintiff is not the same individual as Convicted Misdemeanant Flores;

> (b)    Plaintiff's current residence is at Norwalk, California, which is confirmed and clearly indicated on the face of the subject consumer report, and has also formerly lived in Lynwood, California, Los Angeles, California, and Mount Holly, North Carolina, yet the public court records regarding the criminal conviction indicate that Convicted Misdemeanant Flores resided in Madera, California at the time he committed the offense;

> (c)    Plaintiff's Social Security number, which was provided to Defendant and is partially contained on the face of the subject consumer report is entirely different than that of Convicted

Misdemeanant Flores.

57.    The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

53.    Specifically, it is unreasonable to rely on only a first name and last name and date of birth match—as Defendant did in this instance, especially in this case where commonly named individuals (like Plaintiff) can share a date of birth.

54.58. Had Defendant adhered to reasonable procedures, it would have easily uncovered that the inaccurate and stigmatizing criminal convictions belonged to a completely unrelated individual—one who is unmistakably distinguishable from Plaintiff by physical appearance, as evident from a publicly available mug shot, as well as clear discrepancies in address history and Social Security number.

59.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

60.    Since Defendant is on actual and/or constructive notice of the fact just a first and last name match and date of birth can regularly yield inaccurate, misleading and damaging outcomes—as it did in the current instance—Defendant's 1681e(b)

violation for the subject reporting was done with knowledge of the fact that such

matching procedures, in contexts such as Plaintiff's, cannot possibly be in

compliance with 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

55.61.Alternatively, Defendant acted with reckless disregard of its duties

pursuant to 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

56.    Further, Plaintiff was not informed by Defendant that it had provided

the public record information likely to have an adverse impact on employment to

Plaintiff's employer at the time the information was provided.Further, Plaintiff was

not provided with a proper notice under 15 U.S.C. § 1681k(a)(1), which requires a

consumer reporting agency to notify the consumer, at the time it furnishes public

record information likely to adversely affect employment, that such information has

been provided—along with the name and address of the employer to whom it was

sent. Defendant failed to include the employer's address in its notice, despite the

provision's clarity and the simplicity of compliance. The statute leaves no room for

alternative interpretation: providing both the name and address is a mandatory and

unambiguous requirement, which Defendant plainly failed to satisfy.

57.    Accordingly, Plaintiff was not afforded an opportunity to dispute and

correct the inaccurate report *before* Defendant published the inaccurate report

containing the adverse information to Plaintiff's employer and before Plaintiff's

employer made an adverse decision to terminate Plaintiff's employment.

62.    The FCRA has an employment-specific provision designed to address

the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse affect on employment, which is to either provide an immediate and ***proper*** notice to the applicant at the time it published public records to the user of the report ***or*** it must maintain strict procedures to ensure the public record information is accurate, complete, and up to date.

63.    Since Defendant failed to meet the strict and simple requirements of 15 U.S.C. § 1681k(a)(1), Defendant must have abided by § 1681k(a)(2) and maintain strict procedures to ensure the adverse public record information it reported to Defendant about Plaintiff was complete and up to date.

58.64.However, such strict procedures would have unquestionably prevented the false attribution of another individual's criminal record to Plaintiff. Compliance with § 1681k(a)(2) demands more than the baseline matching procedures used to satisfy § 1681e(b); by definition, it requires a heightened standard of accuracy that cannot be met through the same inadequate protocols.

59.65.Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with both, subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; and subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was accurate, complete, and up to date.

**Patriot Environmental Services Rescinds Plaintiff's Job Application**

60.66. On or about December 13, 2024, Plaintiff was notified by Patriot Environmental Services that his offer of employment had been rescinded as a direct result of the misdemeanor conviction reported by Defendant.

61.67. Shortly thereafter, on or about December 18, 2024, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the criminal conviction of another, namely Convicted Misdemeanant Flores, was published in the consumer report Defendant sold about Plaintiff to Patriot Environmental Services.

62.68. Plaintiff was very panicked, confused, and concerned about the negative impact of Convicted Misdemeanant Flores's serious criminal conviction reported on the subject consumer report – specifically, the impact of the same on his future.

63.69. Specifically, Defendant matched Plaintiff and Convicted Misdemeanant Flores and published the criminal record of Convicted Misdemeanant Flores onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer.– This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Patriot Environmental Services but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

64.70. On or about January 26, 2025, desperate to secure employment with Patriot Environmental Services and riddled with worry over the far-reaching impacts

of being confused with a convicted misdemeanant, Plaintiff disputed the inaccurate information with Defendant, via email.

65.71. Plaintiff identified himself and provided sufficient information to Defendant to support his dispute.

66.72. Plaintiff specifically disputed the criminal record of Convicted Misdemeanant Flores.

67.73. Plaintiff specifically stated that the criminal record of Convicted Misdemeanant Flores does not belong to Plaintiff.

68.74. To support his dispute, Plaintiff attached a copy of the mugshot photo of Convicted Misdemeanant Flores, obtained from the Madera County Court, as well as a copy of his driver's license for comparison, demonstrating beyond doubt that the individual in the report was not the Plaintiff.

69.75. Plaintiff specifically asked Defendant to correct his consumer report and provide the corrected version to both Patriot Environmental Services and himself.

70.76. On January 27, 2024, Plaintiff received Defendant's response, which stated that the documentation had been forwarded to their Dispute Department.

71.77. On January 28, 2025, the Defendant provided Plaintiff with an updated report, which no longer included the misdemeanor conviction, thereby demonstrating the initial reckless inaccuracy disseminated about Plaintiff.

72.78. Plaintiff forwarded a copy of the updated background report to Patriot Environmental Services. Subsequently, the Plaintiff received a call from Patriot

Environmental Services, during which he was informed that they would need to wait for a representative from Human Resources to return from vacation before issuing a new offer letter.

79.   On or about February 14, 2025, Plaintiff received a second job offer from Patriot Environmental Services. This offer, with a proposed start date of March 3, 2025, was contingent upon the successful completion of the same pre-employment requirements as the first job offer.

73.80.However, given the stigmatizing nature of the original consumer report and the potential it carried to cast lingering doubt or suspicion in the eyes of his prospective employer, Plaintiff ultimately chose not to accept the job offer, seeking instead a clean slate untainted by Defendant's patently false and/or misleading and defamatory reporting.

74.81.Defendant's false report caused damage to the Plaintiff by leaving him unemployed for several additional months that he otherwise would have been employed for had Defendant instituted and implemented reasonable procedures to ensure the maximum possible accuracy of the consumer reports they disseminate.

75.82.Specifically, had the Defendant not reported the inaccurate criminal record, Plaintiff would have successfully fulfilled the pre-employment requirements in December 2024, when he initially applied and received a job offer from Patriot Environmental Service and began to work shortly thereafter.

76.83.Due to Defendant's unreasonable procedures in the first place and

despite Plaintiff's continued efforts to seek employment, Plaintiff continues to remain unemployed as his new start date was set to March 3, 2024, pursuant to his employment offer received on February 14, 2025.

84.    The erroneous report severely disrupted Plaintiff's life, delaying his employment and inflicting significant financial hardship that compromised his ability to support his family. Worse still, the report shattered his personal relationships—his fiancée, genuinely believing that Plaintiff was the convicted misdemeanant Flores, ended their engagement in devastation and disgrace. As a result, Plaintiff was deprived of the ability to celebrate both his and his son's birthdays, deepening his emotional suffering. Struggling to meet even basic expenses, he was forced into the humiliating position of borrowing more money from his parents, an indignity that only compounded his distress.

85.    To underscore the harm caused by Defendant's reporting, Plaintiff previously battled alcoholism and successfully achieved sobriety through significant personal effort. Given the seriousness with which Plaintiff regards his recovery—and his family's vigilance concerning any potential relapse—the inaccurate report struck at the most sensitive and hard-fought area of his life.

77.86. Defendant's patently false and/or misleading defamatory attribution of a DUI conviction inflicted profound emotional harm by undermining the very progress Plaintiff had worked so diligently to achieve, casting doubt in the minds of those closest to him. His fiancée, disbelieving his denial and refusing to engage

21

further on the issue, ended their engagement, while his children were left believing their father had relapsed.

78.87. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

79.88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

# CLAIMS FOR RELIEF

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

80.89. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

81.90. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

82.91. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

83.92. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

84.93. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

85.94. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the

inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

86.95. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

87.96. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Cal. Civ. Code § 1785.14**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

88.97. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

89.98. Defendant is a "consumer reporting agenc[ies]" as defined by Cal. Civ.

Code § 1785.3(d).

90.99. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

91.100.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report[s]" as that term is defined by Cal. Civ. Code § 1785.3(c).

92.101.    Defendant violated Cal. Civ. Code § 1785.14 by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within it.

93.102.    As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and

debilitating depression.

94.103.        Defendant willfully violated Cal. Civ. Code § 1785.14 in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2). Alternatively, Defendant was negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(1).

95.104.        Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d), § 1785.31(a)(1) and/or § 1785.31(a)(2).

**COUNT III**
**15 U.S.C. § 1681k(a)(1)**
**Failure to Provide "At the time" Notice and Failure to Maintain and Follow Strict Procedures to Ensure that Adverse Public Record Information is Accurate, Complete, and Up-to-date**

96.105.        Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

97.106.        The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

98.107.        Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers

which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

99.108.    Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Patriot Environmental Services at the time it provided his consumer report to Patriot Environmental Services, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

100.109.    Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

101.110.    Plaintiff did not learn of the adverse information in Defendant's

consumer report until Patriot Environmental Services informed him of the adverse action that was taken against him because of the stigmatizing and erroneous reporting.

~~102.~~111.    Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

~~103.~~112.    Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

~~104.~~113.    Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

~~105.~~114.    Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

~~106.~~115.    As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and

severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

107.116.    Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

108.117.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate

and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 16, 2025

By: */s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Admitted Pro Hac Vice*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
25A Crescent Dr. #402
Pleasant Hill, CA 94523
T:(415) 638-9140
E: andrew@ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*